Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1645 | **DATE** | October 2, 2001 |
| **CASE TITLE** | *Teofilo Leon, Sr. vs. Washington Mutual Bank, F.A.* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies defendant's motion for judgment on the pleadings [8-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 10-3-01 date docketed | |
| ✓ | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 22 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | 01 OCT -2 PM 5:25 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TEOFILO LEON, SR., )
)
Plaintiff, )
)
v. ) Case No: 01 C 1645
)
WASHINGTON MUTUAL BANK, F.A., ) Judge James H. Alesia
)
Defendant. )

DOCKETED
OCT 0 3 2001

## MEMORANDUM OPINION AND ORDER

Currently before the court is defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). For the following reasons, the court denies defendant's motion.

## I. BACKGROUND

On November 7, 2000, Teofilo Leon ("Leon") borrowed money from Washington Mutual Bank ("Washington Mutual") to finance the purchase of his home. In connection with this transaction, Leon signed and received: a note, a mortgage, a 1-4 Family Rider/Assignment of Rents ("Rider"), a Truth in Lending Statement ("TILA Disclosure"), a HUD-1 Settlement Statement, and an Owner Occupancy Agreement. Leon brings this action alleging that Washington Mutual violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, because the TILA Disclosure does not accurately disclose the property interest that Washington Mutual acquired by the terms of the Rider.

The TILA Disclosure states that Leon gave Washington Mutual a security interest in "the goods or property being purchased." Leon claims the Disclosure was inadequate because it fails to reflect an extensive security interest that the Rider creates in Leon's personal property. The Rider states:

> **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

(Compl., Ex. C at 1.)

Washington Mutual is now moving for judgment on the pleadings, claiming: (1) the TILA Disclosure's description of the security interest taken in the transaction was adequate as a matter of law because the Rider creates only incidental interests to the property, which are prohibited from disclosure under TILA; (2) Washington Mutual acted in good faith reliance upon Regulation Z; and (3) Washington Mutual's use of model forms protects it from liability under TILA.

## II. DISCUSSION

### A. Judgment on the Pleadings Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same

2

standard as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hentosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 n.2 (7th Cir. 1999). Therefore, a court should not grant a motion for judgment on the pleadings unless "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). The court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992).

Also, according to Federal Rule of Civil Procedure 10(c), "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c). The Seventh Circuit has extended the term "written instrument" under Rule 10(c) to loan documentation. *See N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998). Accordingly, in ruling on defendant's motion for judgment on the pleadings, it is proper for the court to consider the relevant mortgage documents, which Leon attached to his complaint. *See Id.* at 453 (approving the district court's consideration of correspondence between the parties in granting judgment on the pleadings).

B. **TILA Disclosure Requirements**

1. **Security Interests and Incidental Interests Under TILA**

TILA, Regulation Z, and the Federal Reserve commentary to Regulation Z distinguish

3

between security interests and incidental interests.[1] This distinction between security interests and incidental interests is central to this case because TILA requires the disclosure of security interests on a TILA disclosure statement but prohibits the disclosure of incidental interests.

Regulation Z defines "security interest," for the purposes of TILA disclosures, as: "[A]n interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. § 226.2(a)(25). TILA and Regulation Z require that, in a consumer credit transaction, when a creditor acquires a security interest the creditor must include in the TILA Disclosure: "the fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." 12 C.F.R. § 226.18(m). *See also* 15 U.S.C. § 1638(a)(9) (stating the same). In purchase money transactions such as this,[2] section 226.18(m) of Regulation Z allows the creditor to comply with the disclosure requirement by disclosing the security interest taken in general terms such as "the property purchased in this transaction." 12 C.F.R. Pt. 226, Supp. I § 226.18(m) ¶ 1.

---

[1] Congress authorized the Federal Reserve Board to issue regulations interpreting TILA. These regulations, called Regulation Z, are considered an authoritative interpretation of TILA. *In re Dingledine*, 916 F.2d 408, 411 (7th Cir. 1990). Also, the Board-published official staff commentary to Regulation Z is dispositive in TILA cases unless the commentary is demonstrably irrational. *Clay v. Johnson*, No. 00-12032001, WL 1008139, at *8 (7th Cir. Sept. 5, 2001).

[2] A "purchase money transaction" is a transaction in which the collateral is the item purchased as part of, or with the proceeds of, the credit transaction. 12 C.F.R. Pt. 226, Supp. I § 226.18(m) ¶ 1. In this case, Leon obtained the loan and used the proceeds to finance the purchase of his residence. (Complaint ¶ 8.) This case, therefore, involves a purchase money transaction.

4

Regulation Z expressly excludes incidental interests from its definition of security interests. Incidental interests include: "[i]nterests in proceeds, accessions, additions, fixtures, insurance proceeds ... , premium rebates, or interests in after-acquired property." 12 C.F.R. § 226.2(a)(25). The Official Commentary to Regulation Z explains that TILA prohibits the disclosure of incidental interests. 12 C.F.R. Pt. 226, Supp. I § 226.2(a)(25) ¶ 2.

The central question in this case, therefore, is whether the language of the Rider creates a security interest or an incidental interest, as defined by TILA and Regulation Z. If the Rider created security interests, TILA required disclosure of those additional security interests and the TILA Disclosure is inadequate. If, however, the Rider created incidental interests, TILA prohibited disclosure of those interests and the TILA Disclosure is adequate.

### 2. Washington Mutual's TILA Disclosure

The Rider states:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and *goods of every nature* whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings *now or hereafter attached to the property*, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

5

(Compl. Ex. C at 1) (emphasis added). Washington Mutual contends that it is entitled to judgment as a matter of law because the Rider creates mere incidental interests to the property and that, as such, TILA prohibits their disclosure. Leon argues that the language creates a security interest beyond the real property and its fixtures. Therefore, he argues, the TILA Disclosure was inadequate because "the goods or property being purchased" failed to disclose the security interest created by the Rider. He argues further that the phrase "now or hereafter attached to the Property" modifies only certain items from the list of examples and that, as a consequence, Washington Mutual acquired a security interest in virtually all Leon's personal property, including, for example, any automobiles garaged at his house, all his furnishings, and all his household goods. Under TILA, such a security interest would have had to be disclosed. The court disagrees with Washington Mutual.

Although neither TILA nor Regulation Z defines "fixture," Regulation Z provides that any term not defined by the regulations should be construed in accordance with state law or the contract. 12 C.F.R. 226.2(b)(3). Because, in this case, the contract does not define "fixture," the court looks to Illinois law to define "fixture." According to Illinois law, fixtures are defined as "goods that have become so related to particular real property that an interest in them arises under real property law." 810 ILCS 5/9-102(a)(41).[3] Illinois courts use three factors in determining whether an item is a fixture: (1) the actual annexation of that item to the realty; (2) the application of the item to the use or purpose for which the land is appropriated; and (3) the

---

[3]In July 2001, the Illinois Commercial Code was amended by P.A. 91-893 § 5. The amendments have relocated the provision that defines "fixture," but have not substantively changed the definition.

intention to make the item a permanent accession to realty. *A & A Market, Inc. v. Pekin Ins. Co.*, 713 N.E.2d 1199, 1202 (Ill. App. Ct. 1999) (*citing Sword v. Low*, 13 N.E. 826, 828 (Ill. 1887)). Of the three factors, intent is the preeminent factor and the other two are primarily evidence of intent. *A & A Market*, 713 N.E.2d at 1202. In this case, the Rider, read as a whole, disregards the critical factor of intent upon which Illinois fixture law is focused.

Setting the list of examples in the middle of the paragraph aside, the Rider reads: "[B]uilding materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the property ... now or hereafter attached to the property." This Rider language disregards the consumer's intent to permanently attach the building materials, appliances, and goods to the realty and, therefore, cannot be limited to fixtures. Because the Rider language is not limited to fixtures, the court cannot conclude that the Rider creates merely incidental interests as defined by TILA and Regulation Z. Consequently, the court cannot conclude as a matter of law that Washington Mutual complied with TILA in this case.

Additionally, two district courts have addressed the issue of whether the exact same Rider language at issue in this case created a security interest or an incidental interest. *See Romaker v. Crossland Mortgage Corp.*, No. 94 C 3328, 1996 WL 254299 (N.D. Ill. May 10, 1996) and *Williams v. Gelt Fin. Corp.*, 237 B.R. 590 (E.D. Pa. 1999).[4] Both of these cases involved

---

[4]Leon also draws the court's attention to *Hartshorn v. Ameriquest Mortgage Co.*, C.A. 01-131ML (D. R.I. Sept. 7, 2001) (Report and Recommendation), because it addresses whether the exact Rider language at issue in this case creates a security interest or an incidental interest. Washington Mutual argues that the court should not consider this case because, as a report and
(continued...)

7

transactions in real property. In each of these cases, the court concluded that the rider created a security interest in the consumer's personal property that extended beyond incidental interests to the real property. Washington Mutual attempts to distinguish *Romaker* and *Williams*, arguing that the two cases do not address the applicable fixture law and also that the two cases fail to address the potential widespread consequences of finding this TILA Disclosure inadequate. The court is not persuaded by Washington Mutual's arguments.

The court is not persuaded by Washington Mutual's arguments that the Rider creates mere incidental interests to Leon's real property and not security interests in Leon's personal property. Consequently, the court cannot conclude as a matter of law that Washington Mutual complied with TILA in this transaction.

C.      **The TILA Good Faith Defense**

Washington Mutual argues that, even if its disclosures did not comply with TILA, it is entitled to TILA's good faith defense because it relied upon Regulation Z and the Official Commentary. *See* 15 U.S.C. § 1640(f) (protecting from liability "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board"). Leon argues that whether Washington Mutual acted in good faith is a question of fact, not appropriate for discussion in a motion for judgment on the pleadings. The court agrees with Leon.

---

[4](...continued)
recommendation, it has no precedential value. The court agrees with Washington Mutual. Because the report and recommendation of the magistrate judge may or may not be accepted by the district judge in Rhode Island, it has no precedential authority in this case.

8

Whether the lender acted in good faith is a question of fact, which cannot be addressed in a motion for judgment on the pleadings. *See Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686 at 692 (7th Cir. 1993) (vacating district court's grant of plaintiff's motion for judgment on the pleadings because an ambiguous contract term constituted an unresolved question of fact); *see Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 413 (7th Cir. 1980), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982) (labeling as a "factual determination" whether a creditor acted in good faith in a TILA case). Consequently, the court cannot conclude as a matter of law that Washington Mutual complied with TILA in this transaction.

**D.     Use of Model Forms under TILA**

Washington Mutual also argues that, even if the court does not find that it complied with TILA in this transaction, the court should deem its disclosures adequate because it used Federal Reserve model forms for its TILA Disclosure and that the use of that form satisfies the requirement that TILA-required disclosures be made "clearly and conspicuously." *See* 15 U.S.C. § 1632 (stating in the section entitled "Form of disclosure" that "information required by this sub-chapter shall be disclosed clearly and conspicuously"). Leon contends, however, that Washington Mutual's mere use of model forms does not constitute automatic compliance with TILA. The court agrees with Leon.

On the TILA Disclosure, Washington Mutual disclosed the security interest in the transaction by checking a box next to the phrase "the goods or property being purchased," which, in turn, was under the heading "SECURITY: You are giving a security interest in." (Compl.

Ex. D at 1.) At issue in this case is not the clarity or conspicuousness of the security interest disclosure on the TILA Disclosure. Rather, this case centers around whether that language was sufficient when compared to the substantive terms of the Rider.

Although it is true that, under TILA, "a creditor or lessor shall be deemed to be in compliance with the disclosure provisions of this sub-chapter with respect to other than numerical disclosures if the creditor or lessor ... uses any appropriate model form or clause as published by the board," 15 U.S.C. § 1604(b), that protection does not extend to inadequate content of the disclosure forms. Washington Mutual appears to be arguing that merely using a model form for a TILA disclosure will, without regard for the content of the form or its consistency with the other loan documents, bring a lender into compliance with TILA. Washington Mutual, however, cites no authority, nor can the court find any, to support this proposition. The court will not grant Washington Mutual immunity from TILA disclosure violations simply by virtue of the fact that it used model forms. *See Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (barring consumer's claims as to the form of the contract in a TILA case due to lender's compliance with the model form, but refusing to bar consumer's claims as to the substance of the contract).

Because Leon's claims in this case go to the substance of the security interest disclosure and its consistency with the Rider, and not to the mere form of the TILA Disclosure, the court cannot conclude as a matter of law that Washington Mutual is protected from TILA liability. Consequently, the court cannot conclude as a matter of law that Washington Mutual complied with TILA in this transaction.

## III. CONCLUSION

For the foregoing reasons, the court denies defendant's motion for judgment on the pleadings.

Date: **OCT 02 2001**

James H. Alesia
United States District Judge

11